```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

**WILLIE KEARSON,**
         **-Plaintiff**


     **-v-**                              **3:05 CV 1422 (DJS/TPS)**


**SCHICK-WILKENSON SWORD,**
**a division of ENERGIZER**
**BATTERIES, INC.,**
         **-Defendant**


## RULING ON MOTION TO RECONSIDER

The plaintiff in this case, a man who rose from a manual laborer on the loading docks to become the lone African-American management level employee in defendant's entire organization, was fired from his job ostensibly for failing to report allegedly questionable inventory handling practices of his former superior. He has brought this Civil Rights action against Schick, alleging that he is the victim of scape-goating, and that he was treated differently and terminated because of his race. See 42 U.S.C. §2000e; also see Conn. Gen. Stat. §46a-60(a)(1).

At the direction of Judge Squatrito, on October 17, 2006, the undersigned scheduled a settlement conference in this case for December 20, 2006. The order scheduling the conference specifically directed counsel to "See Nick v. Morgan's Foods, 99 F.Supp.2d 1056, 1062-63 (E.D. Mo. 2000)." That case discusses,

among other things: (1) why a party must dispatch to the conference a representative who truly possesses decision making authority; (2) why the representative who attends the conference must have the authority to change his or her mind; and (3) why it is not sufficient to have such a representative instead merely "available by telephone."

Having ordered the respective parties' lawyers to read the <u>Nick</u> decision, the court infers that they did so, and that they understood the plain import of the following words contained in District Judge Sipple's opinion:

> At the risk of restating the obvious, the Court will review why attendance of a corporate representative with settlement authority is so important.
>
> During the ADR conference, all parties have the opportunity to argue their respective positions.  In the Court's experience, this is often the first time that parties, especially corporate representatives, hear about the difficulties they will face at trial. As a practical matter this may also be the first time that firmly held positions may be open to change.  ***For ADR to work, the corporate representative must have the authority and discretion to change her opinion in light of the statements and arguments made by the neutral and opposing party***.
>
> ***Meaningful negotiations cannot occur if the only person with authority to actually change their mind and negotiate is not present. Availability by telephone is insufficient because the absent decision-maker does not have the full benefit of the ADR proceedings, the opposing party's arguments, and the neutral's input. The absent***

***decision-maker needs to be present and hear first hand the good facts and the bad facts about their case. Instead, the absent decision-maker learns only what his or her attorney chooses to relate over the phone. This can be expected to be largely a recitation of what has been conveyed in previous discussions.*** Even when the attorney attempts to summarize the strengths of the other side's position, there are problems. First, the attorney has a credibility problem: the absent decision-maker wants to know why the attorney's confident opinion expressed earlier has now eroded. Second, the new information most likely is too much to absorb and analyze in a matter of minutes. ***Under this dynamic it becomes all too easy for the absent decision-maker to reject the attorney's new advice, reject the new information, and reject any effort to engage in meaningful negotiations. It is quite likely that the telephone call is viewed as a distraction from other business being conducted by the absent decision-maker. In that case the absent decision-maker will be preoccupied with some other matter demanding her attention at the time she is asked to evaluate new information in a telephone call. Confronted with distractions and inadequate time to evaluate the new information meaningfully, the absent decision-maker's easiest decision is to summarily reject any offer and get back to the business on her desk. Even a conscientious decision-maker cannot absorb the full impact of the ADR conference when they are not present for the discussion. The absent decision-maker cannot participate in good faith in the ADR conference without being present for the conference.***

Unfortunately, as discussed in <u>Dvorak v. Shibata</u>, 123 F.R.D. 608 (D. Neb. 1988) **occasionally parties may use the absence of the decision-maker as a weapon. Such parties "feign a good faith settlement posture by**

> **those in attendance at the conference, relying on the absent decision-maker to refuse to agree," thereby taking advantage of their opponent.** Id., at 610.
>
> In such cases the offending party is able to "gain information about [its] opponent's case, strategy, and settlement posture without sharing any of its own information." Raad, 1998 WL 272879, at *5  Instead of a negotiation session, the mediation becomes a stealth discovery session, to the unfair benefit of the party whose decision-maker is not in attendance. ***When that happens, the Court's referral to mediation has been callously misused.*** "Meanwhile, the opposing side has spent money and time preparing for a good-faith, candid discussion toward settlement. If the other party does not reciprocate, most if not all of that money and time has been wasted." Id.
>
> In sum, ***when a corporate representative with the authority to reconsider that party's settlement position is not present, the whole purpose of the mediation is lost, and the result is an even greater expenditure of the parties' resources, both time and money, for nothing.***

Nick, 99 F.Supp.2d at 1062-63.  Despite having actual knowledge of the foregoing words, the defendant Schick sent to the settlement conference Ms. Tracy Labowsky with $10,000 authority and no ability to change her position.  To obtain more than $10,000 settlement authority, the court was advised that Ms. Labowsky -- and the undersigned -- had to contact and convince Ms. Stephanie Zorn, Esquire, who was "available by phone" in St. Louis, Missouri.

In these circumstances, Ms. Labowsky was little more than a messenger. Schick's failure to send to the December 20th conference a representative with the authority to change her mind without consulting telephonically with Ms. Zorn was a clear violation of the court's order.  This wasted the court's time as well as that of the plaintiff and his counsel. It also prejudiced the plaintiff because the true extent of Ms. Labowsky's empowerment was not revealed until after the undersigned had caused the plaintiff to reduce his settlement demand to $45,000.  The undersigned would not have exacted this downward departure from plaintiff's attorney had it been revealed that Labowsky lacked the authority to change her mind.  Thus, Schick's failure to send an empowered decision maker to the conference had the operative effect of an unfair negotiating tactic in the nature of those expressly condemned in the <u>Nick</u> decision.  Though Schick asserts that this was not its intent, the effect is the same.

Once it became apparent that Ms. Labowsky had to consult by phone with an absent decision-maker (Zorn), the undersigned rescheduled a settlement conference in this case for January 4, 2007 at 2:00 p.m., and caused a subpoena to be issued for Schick's CEO Joseph Lynch, who presumably possesses authority to settle this case.  The court also awarded the plaintiff attorney's fees and costs as a result of Schick's actions.

Defendant Schick has now moved for partial reconsideration of

the undersigned's order. Schick asks that CEO Lynch be excused from attending the conference, and that the court permit Ms. Stephanie Zorn to attend in lieu of Mr. Lynch. Schick's memorandum in support of its motion asserts:

> Ms. Zorn is a senior attorney in Energizer's Legal Department in St. Louis, Missouri with full authority and complete discretion to settle this matter. She is extremely familiar with the facts and circumstances of this case. Indeed, she has been involved in the company's defense of this action since Mr. Kearson filed his original administrative complaint . . . . Mr. Lynch, on the other hand, does not generally get involved in the resolution of legal matters of this nature and has not been involved in the defense of this matter.

(Dkt. #40 at 2). Schick's memorandum continues that:

> [i]n the alternative, although not as equipped to evaluate settlement in this matter due to her level of familiarity with the case *vis-a-vis* Ms. Zorn, if the Court prefers, it will arrange to have Gayle G. Stratmann, Vice President and General Counsel of Energizer, attend the Settlement Conference.

(Dkt. #40 at 2 n.1).

The court declines Schick's request. That Ms. Zorn would send Ms. Labowsky to the December 20, 2006 conference with instructions for Labowsky -- and implicitly the court as well-- to *telephone* Zorn to obtain more than $10,000 settlement authority leaves the court with little confidence in either Zorn's perception of this case or her sense of discretion. Moreover, the undersigned declines to empower Zorn to again sabotage the January 4, 2007

conference by simply reiterating her previous position in which she is now invested.  Nor is Gayle G. Stratmann an adequate substitute for the same reasons, and those discussed below.

That Mr. Lynch is not a lawyer, and is a presumably responsible decision-maker possessed of common sense, and with no particular investment in the unfair and unsound negotiating position that was previously taken by Schick, uniquely qualifies him to attend the January 4, 2007 conference.

Most responsible corporations welcome settlement conferences as an opportunity for the court to assist them in avoiding the staggering costs of litigation, the disruption of corporate operations, and poisonous allegations that have the effect of unfairly besmirching reputations.  Among other things, Mr. Lynch deserves an *unfiltered* apprasial of what this litigation is likely to cost his company, and to be informed not only that this action can be settled for far less than the costs of litigation, but for less than Schick will pay its counsel to prepare the likely-to-be-unavailing motion for summary judgment that for some reason Schick seems bent on filing.  Unfortunately, in the sorry circumstances of this case, the undersigned believes that Mr. Lynch must hear these things and others directly.  It is regrettable that Mr. Lynch had other plans for January 4, and that his attending this conference is inconvenient for him.  But the undersigned also had other plans and is equally inconvenienced by having to reschedule the

conference to January 4, 2007.  That, however, is Schick's fault.

**Dated at Hartford, Connecticut, this 3rd day of January, 2007.**

>  **/s/ Thomas P. Smith**
>  **Thomas P. Smith**
>  **United States Magistrate Judge**